IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINA E. SETSER, | ) | CASE NO. 1:14-CV-02123 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Lina E. Setser ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On December 20, 2011, Plaintiff filed her application for SSI, alleging a disability onset date of June 1, 2006. (Transcript ("Tr.") 18.) Plaintiff's claim was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). (*Id*.) On April 4, 2013, an ALJ held Plaintiff's hearing. (*Id*.) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id*.) A vocational expert ("VE") also participated and testified. (*Id*.) On April 22, 2013, the ALJ found Plaintiff not disabled. (Tr. 15.) On July 30, 2014, the Appeals Council declined

to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On September 24, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 16, 17, 18.)

Plaintiff asserts the following assignment of error: The ALJ erred in finding that Plaintiff did not meet Listing 12.05(C).

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in March 1979 and was 32-years-old on the date the application was filed.  (Tr. 27.)  She had a limited education and was able to communicate in English.  (*Id.*)  She had no past relevant work.  (*Id.*)

### B.    Evidence[1]

#### 1.    Medical and School Reports

Plaintiff last attended the eleventh grade and was in special education classes.  (Tr. 39, 174, 195.)  A report from Mansfield Senior High School entitled Re-Evaluation ("the report") contains test reports from November 1995 and reports from Ronald Gillinov, a school psychologist, dated June 6, 1996.  (Tr. 234-238.)  The purpose of the

---

[1]    The ALJ found that Plaintiff had the following severe impairments: borderline intellectual functioning (BIF); anxiety; morbid obesity; status post open reduction internal fixation (ORIF) in the right ankle; hypertension; and recurrent urinary tract infections/kidney impairment.  (Tr. 20.)  Plaintiff's challenge to the ALJ's decision concerns only her mental impairments, however.  Accordingly, the Court will limit its summary of Plaintiff's medical records to evidence most relevant to Plaintiff's mental condition.

2

report was to determine Plaintiff's continued eligibility for the school's developmentally handicapped (DH) program. (Tr. 234.) According to the report, Plaintiff initially entered the DH program during the 1987-1988 school year. (*Id.*) In October 1990, Plaintiff had obtained a full-scale intelligence quotient (IQ) score of 64 on the Wechsler Intelligence Scale for Children-Revised (WISC-R). (*Id.*) According to a note from Mr. Gillinov, Plaintiff had worked as a bagger at a grocery store and was presently working at a nursing home. (*Id.*) Mr. Gillinov also reported that Plaintiff spoke clearly and attended well to tasks, and she was personable and conversed readily. (Tr. 235.)

Barb Fairchild, a DH teacher, also contributed to the report. She noted that Plaintiff had attained an average score on the Daily Living Skills domain of the Vineland Adaptive Behavior Scales. (Tr. 236.) The Daily Living Skills domain involved health, working, self-care activities, money management, and other independent living activities. (*Id.*) Ms. Fairchild noted that deficiencies were indicated in the domains of communication and socialization. (*Id.*) Mr. Gillinov, Ms. Fairchild, and the special education supervisor, Ms. Turner, determined that Plaintiff qualified for the DH program. (Tr. 239.)

Plaintiff got married on September 23, 1997. (Tr. 226.) She did not earn enough credits to graduate from high school due to a complicated pregnancy. (Tr. 207.) An Individual Education Plan (IEP) addendum dated November 3, 1998, indicated that Plaintiff had returned to school in an attempt to earn enough credits for graduation through the DH work-study program. (Tr. 196, 206.) The IEP also stated that Plaintiff "has a driver's license and is independent in the community." (*Id.*) It further stated that

3

Plaintiff could continue her current living arrangement with her child.  (*Id.*)

An IEP dated December 3, 1998, with an effective date until June 1999, indicated that Plaintiff lived independently with her husband, but that she had a difficult time keeping a job.  (Tr. 207.)  At the time of the IEP, Plaintiff was unemployed without any work hours.  (*Id.*)  Plaintiff was withdrawn from school in October 1999 due to non-attendance.  (Tr. 195.)  At the time, she was in the twelfth grade and had a cumulative grade point average of 2.318 and a class rank of 124 out of 321 students.  (*Id.*)

### 2. Agency Reports

On April 17, 2008, Plaintiff saw J. Joseph Konieczny, Ph.D., a psychologist, for a consultative psychological evaluation.  (Tr. 265-269.)  Dr. Konieczny described Plaintiff as very pleasant and cooperative and noted that she appeared to be an adequate historian.  (Tr. 265.)  He reported that Plaintiff dropped out of twelfth grade when she got married.  (Tr. 266.)  He noted that Plaintiff's work history was "somewhat minimal and sporadic."  (*Id.*)  Plaintiff reported that her longest period of employment was as a cashier at Phar-mor, where she worked for more than two years.  (*Id.*)  She further reported that she was married and had three children, ages two, four, and seven, with her husband.  (*Id.*)  On examination, Dr. Konieczny found no poverty of speech in Plaintiff's conversation and found her capable of expressing herself in a clear and coherent manner.  (*Id.*)  He reported that Plaintiff's ability to concentrate and attend to tasks showed no indication of impairment.  (Tr. 267.)  Her insight and judgment seemed fair.  (*Id.*)  Dr. Konieczny observed that the scores Plaintiff achieved on the Wechsler Adult Intelligence Scale (WAIS-III) placed her intellectual functioning in the borderline

4

range, and he opined that, overall, Plaintiff's intellectual capabilities were in the borderline range. (Tr. 268.) Dr. Konieczny diagnosed borderline intellectual functioning. (*Id.*)

On August 9, 2012, Plaintiff saw Jennifer Haaga, Psy.D., for an interview and mental status examination. (Tr. 325-331.) Dr. Haaga described Plaintiff as a reliable historian. (Tr. 325.) Plaintiff told Dr. Haaga that she had applied for disability benefits due to the eight screws and two plates she had in her foot that made it difficult for her to walk. (*Id.*) Plaintiff reported that she lived with her husband and that they raised their three children together. (Tr. 326.) She stated that she maintained good relationships with her family and that she sometimes attended church. (*Id.*) Dr. Haaga commented that her overall impression of Plaintiff's cognitive functioning was that Plaintiff functioned in the borderline range of ability. (Tr. 329.) Dr. Haaga noted that Plaintiff's attention, concentration, and ability to abstract was adequate. (*Id.*) She further noted that Plaintiff appeared to have good common sense, reasoning, and judgment, and she had good insight into her current situation. (*Id.*) Dr. Haaga reported that Plaintiff appeared cognitively and psychologically capable of living independently and of making decisions about her future, and that there was no indication that Plaintiff would be unable to manage her personal funds. (Tr. 329-330.)

**C.     Hearing Testimony**

   **1.     Plaintiff's Hearing Testimony**

At the time of her hearing, Plaintiff was married and had three children ages 12, 10, and 8. (Tr. 38-39.) Plaintiff testified that she had a driver's license and that she

attended school through the eleventh grade. (Tr. 39.) All of her classes were special education classes. (*Id.*) She stated that she could read and write at a fourth grade level. (Tr. 40.) She could perform simple addition and subtraction. (*Id.*) Plaintiff had stopped working in 2007. (Tr. 41.) She testified that she attempted to work at a gas station, but found that she could not do that job due to ankle pain and problems using the cash register. (*Id.*) Plaintiff described all of her past jobs, including a job as a cashier at Phar-Mor. (*Id.*) She stated that she had help at that job and that she was allowed to use a calculator. (Tr. 42.) Plaintiff also worked as a bagger at Myers and as a cook at Burger King. (*Id.*) Plaintiff testified that she was unable to work due to her foot and ankle problems and her frequent kidney infections, which made her feel weak. (Tr. 43-44.) She also identified anxiety attacks and high blood pressure as further impediments to work. (Tr. 44.)

### 2. Vocational Expert's Hearing Testimony

Mary Alice Harris, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience who would be capable of work at the sedentary level. (Tr. 54.) The individual could frequently climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds. (*Id.*) The individual could perform simple repetitive tasks in an environment where changes are infrequent and explained, and there is no requirement to meet strict production quotas or maintain a rapid pace. (*Id.*) The individual could maintain sufficient attention and concentration for simple tasks with regular breaks. (*Id.*) Additionally, the individual would be limited to work involving simple tasks that do

6

not require much reading, writing, or complex computations. (Tr. 55.) The VE testified that the hypothetical individual would be capable of performing such jobs as an electronic assembler, a final assembler, and a hand packager. (*Id.*)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled

7

regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since December 20, 2011, the application date.

2. The claimant has the following severe impairments: borderline intellectual functioning (BIF), anxiety, morbid obesity, status post open reduction internal fixation (ORIF) in the right ankle, hypertension, and recurrent urinary tract infections/kidney impairment.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) with the following additional limitations: the claimant can frequently climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds. She retains the capacity to do simple repetitive tasks in an environment where changes are infrequent and explained, and there is no requirement to meet strict production quotas or maintain a rapid pace. The claimant can maintain sufficient attention and concentration for simple tasks with regular breaks. Finally, she is limited to work involving simple tasks that do not require much reading, writing or complex computations.

5. The claimant has no past relevant work.

8

6.     The claimant was born in March 1979 and was 32-years-old, which is defined as a younger individual age 18-44, on the date the application was filed.

7.     The claimant has a limited education and is able to communicate in English.

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.    The claimant has not been under a disability, as defined in the Social Security Act, since December 20, 2011, the date the application was filed.

(Tr. 20-29.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

9

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.     Plaintiff's Assignment of Error

Plaintiff argues that the ALJ erred in finding that she did not meet Listing 12.05(C). Listing 12.05 sets forth the requirements for finding disability resulting from "intellectual disability." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  In its first paragraph, Listing 12.05 provides the diagnostic description of the impairment:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

*Id*.  In other words, in order to satisfy the requirements of the Listing, an individual must, first, demonstrate the onset of the deficits described in the diagnostic description prior to age 22, and, second, satisfy the requirements of any one of the four subsections. See *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 676 (6th Cir. 2009) (noting that an IQ below 70 was not sufficient on its own to satisfy Listing 12.05, as the claimant

must "still satisfy the three-prong definition of mental retardation" and one of the subsections).

As relevant to this case, an individual may satisfy the requirement of subsection (C) by demonstrating a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. In other words, subsection (C) sets forth two requirements: (1) an IQ requirement; and (2) a significant limitation requirement.

Here, the ALJ determined that Plaintiff did not meet the criteria of Section 12.05(C), identifying two bases for his conclusion: First, the ALJ observed that no acceptable medical source has diagnosed Plaintiff with mental retardation.  (Tr. 21.) Instead, the ALJ noted, both consultative psychological examiners who evaluated Plaintiff in connection with her disability applications have offered a diagnosis of borderline intellectual functioning with global assessment of functioning (GAF)[2] scores within the mild to moderate functional difficulties range.  (*Id.*)  Second, the ALJ noted that "while the claimant's performance on standardized intellectual and academic achievement tests prior to age 22 demonstrates significantly impaired cognitive functioning and scholastic underachievement, her deficits in everyday adaptive functioning are not well-established."  (*Id.*)  The ALJ concluded that Plaintiff's deficits in adaptive functioning are not as severe as alleged and therefore she does not meet or medically equal the requirements of Section 12.05(C).

---

[2]  The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association.

11

While the ALJ does not explicitly acknowledge that Plaintiff meets the IQ requirement and the significant limitation requirement of Section 12.05(C), he does not appear to take issue with Plaintiff's satisfaction of those requirements.  Rather, the ALJ concludes that Plaintiff does not meet Listing 12.05 because she does not satisfy the diagnostic requirement.  Furthermore, in her Brief on the Merits, the Commissioner does not challenge the validity of Plaintiff's IQ scores, nor does she attempt to argue that Plaintiff fails to meet the significant limitation requirement.  Indeed, Plaintiff has met her burden of showing that she meets the IQ requirement[3] and the significant limitation requirement of Listing 12.05(C).  Accordingly, the issue before the Court is whether Plaintiff has satisfied the diagnostic requirement of the Listing.

Substantial evidence supports the ALJ's conclusion that Plaintiff does not satisfy the threshold diagnostic description of the Listing 12.05, as she cannot establish the "significant sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" required by that description.  "Adaptive functioning includes a claimant's effectiveness in areas such as

---

[3]   Plaintiff notes in her Brief that the record contains evidence of at least one full scale IQ score of 60 through 70. (Plaintiff's Brief ("Pl.'s Br.") at 11, citing Tr. 200, 234.)  In October 1990, at the age of 11, Plaintiff obtained a full scale IQ score of 64 on the WISC-R.  (Tr. 200, 234.)  Additionally, in November 1995, at age 16, Plaintiff was administered a Kaufman Brief Intelligence Test, which showed a composite IQ score 65.  (Tr. 234.)  Neither the Commissioner in her Brief on the Merits, nor the ALJ in his hearing decision, appear to challenge the validity of these IQ scores.  Indeed, the ALJ acknowledges that Plaintiff's performance on standardized intellectual and academic achievement tests prior to age 22 "demonstrates significantly impaired cognitive functioning and scholastic underachievement." (Tr. 21.)  Thus, Plaintiff has shown that she meets the IQ requirement of Section 12.05(C).

social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec.*, 240 Fed.Appx. 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe,* 509 U.S. 312, 328, 113 S.Ct. 2637, 125 L.Ed.2d (1993)). In determining that Plaintiff did not have deficits in adaptive functioning sufficient to meet the listing criteria, the ALJ explained:

> The evidence shows that in high school the claimant was trying to balance academics, part-time work, and (possibly) dating. She dropped out of school because of a complicated pregnancy, not because she was failing her classes. At the time of her withdrawal, she had a grade point average (GPA) of 2.318 and a class rank of 124/321. While school records indicate that the claimant complained of having difficulties keeping a job, they also note that she lived "independently" with a husband, had a driver's license, and was "independent" in the community. Since then, the claimant has been able to manage a growing household, now including three school-age children ages 12, 10, and 8. Furthermore, the claimant told a consultative psychological examiner that she once held a job as a cashier at a local Phar-mor store for more than two years. Based on this evidence, I conclude that the claimant's deficits in adaptive functioning are not as severe as alleged and therefore she does not meet or medically equal the requirements of section 12.05(C).

(Tr. 21.)

The ALJ discussed specific reasons for his finding that Plaintiff did not exhibit deficits in adaptive functioning[2] during the developmental period. The ALJ acknowledged that testing showed that Plaintiff had significantly impaired cognitive functioning and

---

[2] Plaintiff takes issue with the ALJ's use of the phrase "everyday adaptive functioning." (Tr. 21.) According to Plaintiff, Listing 12.05 "does not limit a description of adaptive functioning to 'everyday' activities. It merely requires 'deficits in adaptive functioning.'" (Pl.'s Br. 13.) While Plaintiff is correct that the listing does not use the term "everyday," adaptive functioning includes a claimant's effectiveness in "daily living skills." *See West v. Comm'r Soc. Sec.*, 240 Fed.Appx. 692, 698 (6th Cir. 2007). Moreover, it is clear from the ALJ's lengthy discussion of Listing 12.05(C) that he understood the requirements of the Listing despite his use of the term "everyday adaptive functioning." (Tr. 21.)

13

scholastic underachievement, but noted that no acceptable medical source ever diagnosed Plaintiff with mental retardation. (Tr. 21.) Rather, consultative psychological examiners Drs. Konieczny and Haaga diagnosed Plaintiff with borderline intellectual functioning and assessed GAF scores within the mild to moderate range.[3] (Tr. 21, 268, 329.) Furthermore, the ALJ noted that Plaintiff dropped out of high school due to a complicated pregnancy, not because she was failing her courses. (Tr. 21.) School records indicate that Plaintiff was withdrawn from school in October 1999 due to non-attendance, and at that time she had a cumulative grade point average of 2.318 and a class rank of 124 out of 321 students. (Tr. 195.) Additionally, as the ALJ explained, Plaintiff's daily activities did not support a finding that she had deficits in adaptive functioning, as school records stated that Plaintiff lived "independently" with her husband, had a driver's license, and was "independent" in the community." (Tr. 21, 196, 206, 207.) While Plaintiff testified at her hearing that she did very little around the house and had no hobbies or social activities, the ALJ observed that the limitations in daily and leisure activities to which Plaintiff testified were more extreme than those she reported elsewhere in her disability application. (*Id.*) The ALJ also noted "the fact that the claimant has raised three children, close in age–even with help from her husband, this is not a small feat for a person with as many restrictions as she alleged." (*Id.*) Finally, the ALJ acknowledged that school records showed Plaintiff had difficulty finding a job, but Plaintiff told Dr. Konieczny that she had worked as a cashier

---

[3] Dr. Konieczny assessed a GAF score of 56. (Tr. 268.) A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. Dr. Haaga assessed a score of 70, which indicates mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. (Tr. 329.)

14

for more than two years until she stopped working to become a housewife.  (Tr. 21, 266.)

The ALJ made a clear finding, supported by substantial evidence in the record, regarding whether Plaintiff met the diagnostic requirement of Listing 12.05, offering several reasons for his conclusion that Plaintiff's "deficits in adaptive functioning are not as severe as alleged and therefore she does not meet or medically equal the requirements of section 12.05(C)."  (Tr. 21.)  Accordingly, the Court has been able to adequately review the ALJ's determination that Plaintiff did not satisfy the listing.  For the foregoing reasons, Plaintiff's assignment of error does not entitle her to remand.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: August 24, 2015